UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROLAND ADAMS,<br><br>                Plaintiff,<br><br>     v.<br><br>ABBOTT LABORATORIES,<br><br>                Defendant. | Case No. 2:24-cv-0555-DC-JDP (PS)<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff Roland Adams brings this action for products liability against Defendant Abbott Laboratories. Defendant moves for a second time to dismiss the complaint on the basis that it fails to state a claim under Federal Rules of Civil Procedure 12(b)(6). For the reasons stated below, I recommend that defendant's motion be granted and the complaint be dismissed with leave to amend.

**Procedural History**

Plaintiff initiated this action in Sacramento Superior Court, and defendant removed it on February 22, 2024. ECF No. 1. Plaintiff alleged claims for strict products liability, negligence, and breach of implied warranty. *Id.* Following removal, defendant moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) & (8). ECF No. 4. The court granted defendant's

1

1  motion and gave plaintiff the opportunity to amend his complaint.  ECF Nos. 17 & 21.  Plaintiff
2  has done so, ECF No. 18, and defendant moves again to dismiss, ECF No. 26.

## Allegations

Plaintiff's amended complaint states that he suffers from diabetes and previously used the Libre 2 Sensor, manufactured by defendant, to monitor his diabetic symptoms.  ECF No. 18 at 2.  In 2022, plaintiff's doctor changed his prescription to the upgraded Libre 3 sensor in an effort to expanding the monitoring of plaintiff's diabetic symptoms.  *Id.*  Plaintiff first tried to use the new sensor on December 11, 2022.[1]  *Id.*  In accordance with defendant's insurer's recommendation and as advertised in defendant's promotional materials, plaintiff placed the sensor near the back of his upper arm.  *Id.* at 2-3.  Shortly after he placed the sensor, plaintiff noticed blood on his shirt and, once he removed the sensor, he saw that the sensor was completely covered in blood.  *Id.* at 3.  Plaintiff sought medical treatment after using the sensor; a registered nurse prescribed plaintiff extra strength pain medication and antibiotics.  *Id.* at 4.  He was charged $30 for the treatment.  *Id.*

Following the incident, plaintiff sent the sensor back to defendant and filed an insurance claim.  *Id.*  Before doing so, plaintiff examined the sensor and noticed that it was "atypical, misshapen, and abrasive" and had "an irregular and jagged filament."  *Id.* at 3-4.  Defendant's insurer denied plaintiff's claim, stating that the sensor presented no issues after testing and that plaintiff's injury was likely due to incorrect placement of the device to high on plaintiff's arm.  *Id.* at 4.

Plaintiff alleges three causes of action: strict product liability, negligence, and breach of implied warranty.  *Id.* at 5-8.  He seeks $10,000,000 in compensatory damages.  *Id.* at 9.

## Legal Standards

"Dismissal under Rule 12(b)(6) is proper when the complaint either (1) lacks a cognizable legal theory or (2) fails to allege sufficient facts to support a cognizable legal theory."  *Somers v.*

---

[1] The amended complaint also makes a passing reference that plaintiff had a similar experience with the sensor when he used it on August 9, 2024.  *Id.* at 4.  However, that incident occurred well over two years after plaintiff filed this case and thus will not be considered.

1  *Apple, Inc.*, 729 F.3d 953, 959 (9th Cir. 2013). To survive a motion to dismiss for failure to state
2  a claim, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face."
3  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility when a
4  plaintiff "pleads factual content that allows the court to draw the reasonable inference that the
5  defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

6  In deciding motions under Rule 12(b)(6), the court generally considers only allegations
7  contained in the pleadings, exhibits attached to the complaint, and matters properly subject to
8  judicial notice, and construes all well-pleaded material factual allegations in the light most
9  favorable to the nonmoving party. *Chubb Custom Ins. Co. v. Space Sys./Loral, Inc*., 710 F.3d
10 946, 956 (9th Cir. 2013); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). In certain
11 circumstances, the court may also consider documents referenced in but not included with the
12 complaint, or that form a basis of plaintiff's claims. *See United States v. Ritchie*, 342 F.3d 903,
13 907 (9th Cir. 2003).

14 **Discussion**

15 The first amended complaint alleges three causes of action: strict products liability,
16 negligence, and breach of warranty. ECF No. 1. For the foregoing reasons, I find that the
17 amended complaint has failed to state a claim and recommend that this action be dismissed with
18 leave to amend.

19 Strict Products Liability: Design Defect

20 Plaintiff has advanced a theory of design defect. *See* ECF No. 18 at 5. Defendant asserts
21 three independent arguments for why plaintiff's strict product liability claim fails. Defendant
22 argues: first that California does not recognize a design defect claim for prescription medical
23 devices. ECF No. 26 at 5. Second, that plaintiff has not alleged that there was an actual defect in
24 the design of the product. *Id.* at 6. And finally, that plaintiff has not plausibly alleged a design
25 defect under either the Risk Benefit Test or the Consumer Expectations Test. *Id.* at 7. In
26 response, plaintiff asserts that his pro se status should shield him from being held to the same
27 standard as an attorney and that this case cannot be properly adjudicated with discovery. ECF
28 No. 28.

3

A design defect claim requires that a product be built in accordance with its intended specifications, and that the design itself is inherently defective. *Barker v. Lull Eng'g Co.*, 20 Cal.3d 413, 429 (1978). To be actionable under the design defect theory of product liability, a product design must be defective under either the Consumer Expectations Test or the Risk-Benefit Test. *Soule v. Gen. Motors Corp.*, 8 Cal. 4th 548, 566-67 (1994). The Consumer Expectations Test considers whether the product "fail[s] to perform as safely as its ordinary consumers would expect when used in an intended or reasonably foreseeable manner." *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010). Alternatively, the Risk-Benefit Test considers whether "the design embodies 'excessive preventable danger,' that is, the risk of danger inherent in the design outweighs the benefits of such design." *Id.* Of particular relevance here, California law precludes strict liability predicated on a theory of design defect against manufacturers of prescription medical devices. *See Garrett v. Howmedica Osteonics Corp.*, 214 Cal. App. 4th 173, 182 (2013) (recognizing "an exemption from design defect strict products liability for all implanted medical devices that are available only through the services of a physician").

Plaintiff alleges that the sensor was prescribed by his physician and that it is a medical device. ECF No. 18 at 2. As noted above, California law does not permit a strict liability claim in such circumstances. *See Higginbottom v. Dexcom, Inc.*, 744 F. Supp. 3d 1058, 1084 (S.D. Cal. 2024) (finding plaintiff could not proceed with design defect claims relating to his physician-prescribed insulin pump because "California law precludes strict liability claims based on a design defect with respect to manufacturers of prescription medical devices") (citing *Garrett*, 214 Cal. App. 4th at 182); *see also Fussy v. RTI Surgical*, 1:21-cv-01397-DAD-BAK, 2022 WL 1122615, at *3 (E.D. Cal. Apr. 14, 2022) (dismissing strict liability design defect claim for a prescribed medical device). Plaintiff's strict liability claim for design defect should be dismissed.

Even if the court were to consider plaintiff's design defect claim, plaintiff has not alleged that the *design* of the sensor was defective; rather, he alleges that the sensor *itself* was defective because it was "atypical, misshapen, and abrasive" and had "an irregular and jagged filament."

1 | ECF No. 18 at 3-4. Because plaintiff's claim lacks the necessary element of a flawed design, his
2 | claim fails for this reason too.

3 | Negligence: Manufacturing Defect[2]

4 |     Defendant argues that the complaint fails to allege that defendant caused the defect. ECF
5 | No. 26 at 9. Defendant points out that plaintiff's conclusory assertion that his injury was "caused
6 | by the unusual shape and nature of the Libre 3 filament" fails to connect the alleged defect to
7 | defendant's negligence. Moreover, defendant argues that plaintiff's theory of *res ipsa loquitur* is
8 | misplaced since the complaint is devoid of any allegation that the sensor was under defendant's
9 | exclusive control. *Id.* at 10. Plaintiff again raises no specific arguments in his opposition but
10 | argues that his pro se status warrants a more lenient pleading standard and that discovery is
11 | necessary for resolution of these claims. ECF No. 28.

12 |     A negligence claim under California law requires a plaintiff to allege that the defendant
13 | "owed [the plaintiff] a legal duty, breached the duty, and that the breach was a proximate or legal
14 | cause of [the plaintiff's] injury." *Gonzalez v. Autoliv ASP, Inc.*, 154 Cal. App. 4th 780, 793
15 | (2007). "In the context of a products liability lawsuit, [u]nder a negligence theory, a plaintiff
16 | must also prove . . . that the defect in the product was due to negligence of the defendant." *Id.*
17 | (quoting *Merrill v. Navegar, Inc.*, 26 Cal. 4th 465, 479 (2001)) (quotations omitted).

18 |     A manufacturing defect claim is predicated on a theory that "a suitable design is in place,
19 | but that the manufacturing process has in some way deviated from that design." *In re*
20 | *Coordinated Latex Glove Litig.*, 99 Cal. App. 4th 594, 613, 99 (2002). "A product has a
21 | manufacturing defect if it differs from the manufacturer's intended result or from other ostensibly
22 | identical units of the same product line." *Garrett*, 214 Cal. App. 4th at 190, (citing *Barker*, 20
23 | Cal. 3d at 429).

24 |     Here, the complaint fails to explain how the sensor either deviated from defendant's
25 | intended design or how the sensor deviated from other seemingly identical sensors. *Lucas*, 726 F.

---

[2] Although plaintiff does not explicitly state that his negligence claim is premised on a theory of manufacturing defect, the court interprets plaintiff's reference to the manufacturing process as an indication of how the claim is pled. Should plaintiff seek to premise his negligence claim on an alternate basis, he should take care to say so in his amended complaint.

Supp. 2d at 1155. Plaintiff alleges that the sensor was shaped differently than the prior model (the Libre 2 sensor), but he does not explain whether the sensor he used was different from other Libre 3 sensors or whether it worked differently than defendant intended. A bare allegation that the sensor had a defective shape is insufficient. *Iqbal*, 556 U.S. at 678.

In terms of plaintiff's *res ispa louqitur* argument; it too does not aid his claim. *Res ipsa loquitur* may in some circumstances permit an inference of negligence to be drawn from a set of proven facts. *Wilson v. United States*, 645 F.2d 728, 730 (9th Cir. 1981). The traditional elements needed to invoke *res ipsa loquitur* are (1) an injury-producing event occurs of a kind that ordinarily does not occur in the absence of someone's negligence; (2) the event must be caused by an agency or instrumentality within the exclusive control of the defendant; and (3) the event must not have been due to any voluntary action or contribution on the part of the plaintiff. *Olsen v. States Line*, 378 F.2d 217, 220 (9th Cir. 1967). As defendant argues, plaintiff has not alleged that the senor was under defendant's exclusive control.

<u>Breach of Implied Warranty of Fitness for a Particular Purpose</u>

Defendant argues that plaintiff's breach of implied warranty claim fails for three independent reasons. First, defendant argues that the product's disclaimer bars plaintiff's claim.[3] ECF No. 26 at 11. Second, defendant argues that even it had not disclaimed the implied warranty, plaintiff has failed to allege vertical privity, as required by California law. *Id.* at 12. And finally, defendant argues that plaintiff has not alleged that he used the sensor for anything other than its ordinary purpose. *Id.*

"An implied breach of warranty of fitness for a particular purpose arises only where (1) the purchaser at the time of contracting intends to use the goods for a particular purpose, (2) the seller at the time of contracting has reason to know of this particular purpose, (3) the buyer relies on the seller's skill or judgment to select or furnish goods suitable for the particular

---

[3] Defendant asks the court to consider the product's disclaimer since plaintiff's complaint repeatedly referenced the product's promotional and product materials. ECF No. 26 at 11. Since the court need not address this argument, the court will not consider materials outside of the pleadings at this time.

1 purpose, and (4) the seller at the time of contracting has reason to know that the buyer is relying
2 on such skill and judgment." *Keith v. Buchanan*, 173 Cal. App. 3d 13, 25 (1985).

3       "A particular purpose differs from the ordinary purpose for which the goods are used in
4 that it envisages a specific use by the buyer which is peculiar to the nature of his business
5 whereas the ordinary purposes for which goods are used are those envisaged in the concept of
6 merchantability and go to uses which are customarily made of the goods in question." *Am. Suzuki*
7 *Motor Corp. v. Superior Crt.*, 37 Cal. App. 4th 1291, 1295 n.2 (1995) (internal quotation marks
8 omitted).

9       To state a claim for breach of an implied warranty for a particular purpose, a plaintiff must
10 identify the particular purpose for which he obtained the product. Plaintiff here alleges that he
11 intended to use the sensor to monitor his diabetes, which, according to the complaint's
12 allegations, is the product's ordinary use. ECF No. 18 at 2 ("The sensor uses a non-injurious
13 filament to penetrate a patient's skin and monitor for diabetic symptoms."). Therefore, plaintiff
14 has not stated a claim for breach of the implied warranty of fitness for a particular purpose. *See*
15 *Smith v. LC Electronics U.S.A, Inc.*, 2014 WL 989742, at *8 ("[P]laintiff has identified no
16 particular purpose for which she purchased the washing machine. She purchased it to wash her
17 laundry, which is the ordinary purpose of a washing machine.") (internal quotation marks
18 omitted); *Kent v. Hewlett-Packard Co.*, No. 09-cv-05341-JF, 2010 WL 2681767, at *5 (N.D. Cal.
19 July 6, 2010) ("Plaintiffs have not alleged that they used the computers . . . for anything other
20 than their ordinary purpose. Thus, plaintiffs have not stated a claim for breach of an implied
21 warranty for a particular purpose.").

22       Moreover, this claim fails because the complaint does not allege that privity exists
23 between plaintiff and defendant. "Under California law, the general rule is that privity of contract
24 is required in an action for breach of either express or implied warranty and that there is no
25 privity between the original seller and a subsequent purchaser who is in no way a party to the
26 original sale." *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1236 (N.D. Cal. 2012)
27 (internal quotation marks omitted) (citing *Burr v. Sherwin Williams Co.*, 42 Cal.2d 682, 695
28 (1954)). "A buyer and a seller stand in privity if they are in adjoining links of the distribution

chain"; "[t]hus, an end consumer . . . who buys from a retailer is not in privity with the manufacturer." *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (citing *Osborne v. Subaru of Am. Inc.*, 198 Cal. App. 3d 646, 656 n.6, (1988)).

Accordingly, it is RECOMMENDED that defendant's motion to dismiss, ECF No. 26, be GRANTED and plaintiff be granted thirty days from the date of any order adopting these findings and recommendations to file an amended complaint.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days of service of these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Any such document should be captioned "Objections to Magistrate Judge's Findings and Recommendations," and any response shall be served and filed within fourteen days of service of the objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. *See Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: March 21, 2025

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE

8